The next case on our call this morning is Agenda No. 3, Case No. 106068, People of the State of Illinois v. Ricardo Siguenza-Brito, Appalachia. Please. Good morning, Mr. Chief Justice, Honorable Justices. May it please the Court. My name is Matthew Connors, and I appear on behalf of the people of the State of Illinois. This Court should reverse the ruling of the Appellate Court and reinstate defendants' convictions for both aggravated criminal sexual assault and aggravated kidnapping because these two convictions, and only both of these convictions, accurately reflect the crimes committed by a defendant, the harm suffered by the victim, and the intent of the Illinois General Assembly to more severely punish defendants who commit multiple criminal crimes during one course of conduct. So, the question before this Court is simply, in those occasions where the defendant commits the acts necessary to sustain two convictions, and there is no statutory basis to bar the imposition of either of those convictions, whether the interrelationship of those two charges with one another is sufficient to necessitate the alteration of those convictions. In this case, defendant cannot point to any identifiable right which would necessitate a reversal of either of those convictions. The instant case does not fall within the scope of any theory of law previously embraced by this Court. Indeed, defendants' arguments and the chief authority relied upon below have engaged in a hodgepodge of analysis, none of which directly governs this issue. For example, the appellate court referred to the King Doctrine, the one act, one crime analysis. But it is clear that it's not merely one act that was committed in this case. Defendant committed multiple acts against the victim. Defendant abducted the victim from a public street, forced her against her will into the back of a vehicle, and transported the victim to his garage. He then committed the acts necessary to satisfy the offense of the criminal sexual assault, and that he penetrated the victim's vagina. Moreover, the people required to prove that the defendant did both of these acts with a temporal relationship with one another in order to sustain a conviction for the aggravated versions of both of those offenses. The charging instrument in this case demonstrates that the people intended to prove the case based upon each of these acts engaging in the Rodriguez analysis. It is your position that this is not double enhancement, is that right? That is correct. Double enhancement, as previously articulated by this court, relies upon the use of one factor twice. Defense counsel characterized this as vertical enhancement, and has posited that there is a new mutual enhancement theory which should be used here. However, in this case, it's not a matter of mutual enhancement. What bears repeating in this case is that the defendant committed two offenses against the victim. He did not simply commit a kidnapping, and he did not simply commit a criminal sexual assault. He committed both offenses during one course of conduct. The victim didn't suffer just a kidnapping. She suffered a kidnapping coupled with a sexual assault to her. The Illinois General Assembly has made clear that they want to stop criminals from taking part in this multiple course of conduct. People v. Scott makes that clear, and this court affirms Scott, be it on other grounds. But it made clear that the attempt to have an aggravated kidnapping is to stop the kidnapping before it proceeds to the next step. And in this case, the next step was a criminal sexual assault. Speaking of the legislature, where is the clear indication of legislative intent that the two offenses be allowed to enhance each other? Well, the clear intent of the legislature is demonstrated by the plain language of the statute. The Illinois General Assembly has sought to create statutes that directly target this behavior. Now, in this case, there are multiple vehicles through which the General Assembly could have done so, and they chose to say, with the addition of any other felony during the course of that conduct. So that renders this case different than those other instances where the people were forced to plead and prove a case without the express intent of the legislature. Here, the legislature is giving the people the opportunity to plead and prove a case, to demonstrate that defendants who commit a crime in conjunction with another crime do deserve a more severe punishment. In this case, it stems from the aggravated versions of both of these offenses. Mr. Connors, in the indictment, was the defendant actually charged with aggravated criminal sexual assault and criminal sexual assault based on the different types of penetration, whether it be oral or vaginal? It is my understanding that the only counts of the indictment which are at issue here did discuss just the one count. The record fails to reflect that there was actually successful oral penetration of the victim. So in that case, it would just rely upon the vaginal penetration. Okay, and to follow up to Justice Garmon, does it matter how the defendant was actually charged, or can we look to the facts to determine whether or not the felony supporting the aggravated kidnapping was different criminal sexual assault than the one supporting the conviction for aggravated criminal sexual assault? Do we have to wait until a trial to determine the facts? Yes, Your Honor, and in this case, before trial, it bears noting that the criminal sexual assault and the regular kidnapping charges were both not laid before the beginning of trial. So as a result of the case, the only convictions the defendant stood in jeopardy of was in fact the aggravated versions of both. So then it was incumbent upon the trier of fact in this case, and it was a bench trial, to determine whether or not the people successfully established counts one and counts two. And the people do rarely concede that in counts one and two, they do lay out the elements indicating that in order to sustain a conviction for the aggravated versions of both offenses, people would have to require the predicate felonies in addition to the other offenses. The alternate theory that has also been posited by the courts below and by the defense counsel is that there is somehow a double jeopardy violation because, again, multiple convictions are being carved from one series of physical acts. However, the double jeopardy analysis is immaterial where courts have held that it's the role of the legislature to determine whether or not, again, punishment is necessary, and even if it runs afoul of the double jeopardy principles, if there is an express provision, and in this case there is, based upon the plain language of the statute, it would not be rendered constitutionally infirm. Thus, any sort of analysis the courts have engaged in doesn't quite fit this factual scenario, and that's why this court is faced with the notion of articulating a new rule, this mutual enhancement. Notably, the mutual enhancement rule is also somewhat problematic. In this case, the remedy fashioned by the appellate court and the remedy offered by the court in McDarrow, which the appellate court relied upon, merely reduced the aggravated kidnapping to its lesser form. Doing so recognizes that you are nevertheless allowed to use the kidnapping to aggravate the criminal sexual assault to the aggravated version. It fails to demonstrate why it is any different than turn around and use criminal sexual assault to aggravate the kidnapping to the aggravated version of the offense. As such, the current remedy is internally inconsistent and fails to provide any sort of meaningful guidance to the circuit court or to the people as they plead and prove these cases. Quite simply, the two convictions for aggravated criminal sexual assault and aggravated kidnapping are the only two convictions which accurately reflect the crimes committed by the defendant. He didn't merely commit simple predicate felonies at issue. He engaged in a multiple course of crimes at one time where he did not merely kidnap the victim and he did not merely criminally sexually assault her. And as such, it is only the imposition of both of those convictions which would accurately reflect those harms. As such, for those reasons, we ask this court to reverse the ruling of the appellate court and reinstate defense convictions for the aggravated versions of aggravated criminal sexual assault and aggravated kidnapping. If we were to uphold both convictions for the aggravated offenses, could we do that without overruling the appellate court in McDarrah? No, Your Honor, and it's the people's supposition that McDarrah was incorrectly decided. And to the extent that McDarrah created this new theory of mutual enhancement, it failed to clearly articulate any legal identifiable basis for doing so. McDarrah relied upon initially a king, one act, one crime analysis, but then misapplied king. King, it is also, again, engaged in a double enhancement analysis. Are you saying we would have to overrule it? Yes. We would. Yes. It is the people's proposition that McDarrah was simply wrongly decided and this lower decision in this case echoed that error by applying it so. So, again, for all these reasons and those stated in the people's brief, we ask this court to reinstate the defendant's convictions.  Mr. Cerritos. Just one housekeeping matter. I will address the State's, respond to the State's argument, and then I will take a few moments to talk about my cross-appeal issue and reserve a few minutes to rebut their argument. Mr. Chief Justice, your honors, may it please the court. My name is Manuel Cerritos and I'm here this morning on behalf of Ricardo Sequenza-Brito. The rule that we're asking for is that the State should not be able to obtain two convictions of aggravated offenses based on identical proof from the same set of facts without express legislative intent permitting the type of enhancement. The enhancement we're speaking of is improper mutual enhancement. In this case, the aggravated criminal sexual assault was enhanced by a predicate kidnapping. In other words, this was sexual assault plus the kidnapping. And the aggravated kidnapping was enhanced by the sexual assault. Those offenses were enhanced, were elevated from Class II to Class X. Now, although the enhancements are different, I'm sorry, this is not a double enhancement. Double enhancement is whether the same factor is used twice. At issue is a mutual enhancement where the same set of facts is used twice. Where does that come from? This mutual or lateral enhancement, where is that recognized? It comes from the case law. Most of the cases deal with double enhancement. McDowell was the only case on the books that in most of the cases they view it, what I refer to as lateral, I'm sorry, vertical. It's in the offense and the enhancement comes either to increase the offense or increase the sentencing. McDowell and. Counsel, if I may, I believe it's this court that described the double enhancement rule as prohibiting a single factor from being used twice with respect to the same offense. How does an appellate court override our decision and add another? What case are you speaking of, Your Honor? People v. Phelps. Okay. McDowell was decided in 1988, 20 years before our case was decided. So it did not have the benefit of Phelps. The problem here was that our court, the first district, found McDowell on point on all fours. And they describe it as double enhancement. I'm sorry. You found it on all fours with what? With McDowell. McDowell. And it's our view that the mechanism here is the same. That doesn't answer Justice Fitzgerald's question. I can understand where the trial court decided to follow McDowell, right, which was an appellate court case. Why aren't they wrong in following it in light of the fact that the Supreme Court does not recognize the lateral enhancement? Well, the appellate court filed McDowell. And it was just the gut feeling that, you know, the state was getting two convictions, enhancing one at the cost of the other. I understand. I understand. Is McDowell consistent with what Chief Justice Fitzgerald just read you regarding Phelps? I think the law has to be updated because I don't think Phelps conceives of what's happening here. And toward that end, if I may just ---- Are we the court that does the updating? Yes, Your Honor. I'm just providing you a couple tools here on how to view this. The double enhancement was one of them. And per the state, they included another analysis. And I thought we would provide the court with a few views here. So this would be we'd be making new law and expanding the rule? New law in the sense that it would be coming from this court as opposed to the two other districts that have ruled on this issue. Let me take it from a little different approach than Justice Freeman. He said would we have to, in fact, he asked the state whether we would have to overrule McDowell. Are you asking us to overrule our own cases now? No, Your Honor. I'm just asking for a clarification because no other case in the double enhancement branch deals with what we have here. It's not looking just at a fact or a factor. It's looking at a series of facts. If you look at both charges under the mutual enhancement, they're both elevated by looking at each other. I refer to them as mirror image. You flip-flop them and you get this feeling that there's enhancing going on. It was my job to reconcile the double enhancement with what's going on here in McDowell. I consider it a mutual enhancement scenario. And it has to have legislative intent. The state mentions at the outset that they're looking for a statutory bar. To the contrary, this must be expressed, there must be clear express permission by the legislature. The keenest example we have is in the armed violence situation. In 1982, this court ruled in Donaldson that both home and, sorry, that armed violence and the predicate convictions cannot both come out of one series of offenses. And that law stayed on the books until the legislature deemed to provide some exceptions to that. And they're found in subsection D of armed violence. So that's a clear indication of when the legislature will permit enhancement. And where they will not permit enhancement is where, in a class X situation, we have a couple cases from the first district where the state wanted to use firearm to enhance offense and then use it again for priors, uses criminal history for priors. And in both those cases, the court found that you cannot do that without clear legislative intent. Now, an alternative view to look at it is that what we're dealing with here is a double jeopardy problem. Where we're talking about one act. Under the Blackberger test, we look at both offenses and we see identical elements. And under that view, this is so because, once again, you're having, if you look at both, the charging instruments, they're just describing one act. And that's no clearer found in the charging instrument. In count one, there's a charge of aggravated criminal sexual assault with enhancement of kidnapping. And in count two, there was aggravated kidnapping. And this is a reference to sexual assault. There's not even a description of that act. So they really cannot stand by itself. And under CRESPO, we look at the state's intent to charge. If you look at both charging instruments. Do we have a one act, one crime issue in this case? Well, one act, one crime is, yes, Your Honor, under double jeopardy. If they're both identical elements, sorry, if both offenses contain identical elements, then you should view it as a one act, one crime problem. It hasn't been presented to us as a question in this case. I'm sorry? One act, one crime hasn't been presented to us as an issue in this case. Well, pursuant to the state's invitation, they view it as one act, one crime. We took up the challenge and say that it is one act, one crime. An alternative is that it's also a lesser included. If you look at both offenses, the kidnapping charge must be viewed as a lesser included of the aggravated criminal sexual assault. In fact, the state doesn't even bother to describe it, the sexual assault, other than naming it in the kidnapping charge. Counsel, I want to ask you the same question I asked the state. Was the charging instrument aggravated criminal sexual assault based on different types of penetration? That's not known. The woman described both oral and vaginal penetration, but the state has chosen vaginal penetration. So how can we know if it was all the same facts? Well, that's on the state for their failure to clear up the ambiguity. Based on CRESPO, we know that it's up to the state to make its intent clear. The state did not do so. Finally, just very quickly, we raised on cross-appeal a reasonable doubt issue. Just very briefly, the complainant's account was contradicted by a non-interested third party who saw, who did not see, she saw the complainant walk down three feet behind the defendant. And that totally devastates the state's view that it was secret confinement, forced secret confinement. And she just told a fantastical story on her escaping from three men without, just breezing by three men and she didn't suffer for it apparently. And then she was also impeached to a collateral manner as to her work record. And she was impeached generally as to her, you know, she had a criminal record. In some, the relief we ask is varied. We asked that this court should have either affirmed McDowell, which would reduce the, would reduce the kidnapping to simple kidnapping and remanded the cause for resentencing. Or under a double jeopardy analysis, under the double jeopardy analysis, we would also reduce for simple kidnapping. Under the one act, one crime analysis, it would vacate the kidnapping because it's the same offense. And we would urge this court that Your Honors can avoid the constitutional analysis and vacate the kidnapping based on reasonable doubt. If Your Honors have no further questions, that's all I have at this time. Just briefly, Your Honors. The court is correct to note that this theory of mutual enhancement is a novel construct and has no logical underpinnings in any other body of law. In fact, the predicate felony doctrine, which has applied in this case, as articulated by the appellate courts in Scott, Boyd and Pugh, all recognize the use of a predicate felony to aggravate another felony and that it allows for a conviction on the predicate felony. This case is nothing more than an outgrowth of those decisions. It can be affirmed on that basis. When it comes down to the mutual enhancement versus double enhancement, the concerns raised by vertical enhancement are simply not found here. In those cases, this court recognizes that the Illinois General Assembly has contemplated elevating a punishment with the creation of a new offense based upon any one element. In this case, that is not what has occurred. And as such, the harm caused by the defendant simply isn't present. Turning then to the concept of having a lesser included offense, it has never been the people's proposition that aggravated kidnapping is a lesser included offense of aggravated criminal sexual assault. The argument as articulated by the defendant is more properly stated that kidnapping is, in his estimation, a lesser included of aggravated criminal sexual assault. However, the defendant was not convicted of the offense of kidnapping. He was convicted of the offense of aggravated kidnapping. And as such, it cannot be said that where both charges, while they do reference one another, neither of those cases represents a lesser included offense. Defendant's request for cross-relief stems from a reasonable doubt claim. Notably silent from defendant's argument is a recognition of the standard of review, which weighs heavily against his arguments. It also must be noted that the defendant concedes that the impeachment suffered by the victim was on a collateral matter. The impeachment was offered in a post-trial hearing where the circuit court indulged a defense counsel and allowed him to present somebody who indicated that approximately two weeks before the victim was attacked, the location where the victim worked closed down. However, the person who gave that testimony had no knowledge as to what occurred on the date in question. Moreover, the disinterested third party, as articulated by the defendant, was actually defendant's neighbor, somebody who defendant asked to come testify on his behalf, and who presents an alternate theory indicating that she saw a defendant and an African-American female walking down the street together. At no point in time did that person indicate that she identified the victim as that person walking with the defendant. Defendant's entire theory of the case is that the victim was engaged in prostitution and that the instant case was a deal gone wrong. However, there's no support for that anywhere in the record. The circuit court found that claim to be without merit. That is an approach that the appellate court also found. We urge this court to reach the same conclusion. Thus, we ask this court to reverse the judgment of the appellate court and reinstate defendant's convictions for both aggravated versions of kidnapping and aggravated criminal sexual assault. Thank you. Just very briefly, yes, to the reasonable doubt. This is on cross-relief. Yes, Your Honor. The standard of proof, the standard of review we've covered in our briefs amply. We believe that no rational prior effect would have found the defendant guilty of kidnapping based on the evidence adduced. Can the testimony of the victim alone be sufficient to convict? Yes, Your Honor. If she's credible, the complaint alone is sufficient. But our theory is that she was impeached. She told a story that was contradicted, and she was just fantastic in her account. Was she impeached during the trial or at some other point, as counsel has suggested? It was impeached after trial when the defense counsel. After they're identifying him guilty by the trial? Yes, Your Honor. But the court opened up the trial again so that he could rule on that evidence. And apparently found it wanting, is that correct? Yes, Your Honor. And we believe no rational prior effect would have done so based on the witness that was brought in that the counsel alludes to did not even know her. She told a story that she worked for a telemarketing outfit, and the manager of that place had no knowledge of her, never saw her before, and just denied her story altogether. And as to the counsel mentions that the defendant, that they were walking together down the street. I would have to correct counsel. They were walking down the alley with defendant three feet ahead of the complainant. And it's our position that no complainant that would be saying that she was kidnapping would walk in front of the defendant if she was following him. Did that witness identify the person walking behind as the victim? She did not clearly identify the complainant, but she was a rather remarkable woman, we would argue. Nonetheless, her description was she was shorter than the defendant and approximately 280 to 300 pounds. I think that's a rather distinctive figure. The non-interested witness also, she wasn't a friend. She described herself as a neighbor who knew the defendant after a few years. She had no reason to lie. Based on that argument, we would ask this court to vacate the aggravated kidnapping conviction. Thank you. Thank you. Case number 106068 will be taken under advisement as agenda.